**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF MISSOURI**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| DANNY JOE CONNOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 6:15-cv-03185-DGK-P |
| | ) | |
| NATHAN BOX, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Plaintiff, who currently is incarcerated at the Western Missouri Correctional Center in Cameron, Missouri, filed this civil rights action pursuant to 42 U.S.C. § 1983, seeking relief for certain claimed violations of his federally protected rights. Pending before this Court is Defendant Nathan Box's Motion for Summary Judgment. (Doc. 83). For the reasons discussed below, Defendant's Motion for Summary Judgment is GRANTED, and the case is DISMISSED.

### I. Background

Plaintiff Danny Joe Connor commenced this *pro se* action for alleged violations of his federally protected constitutional rights while he was incarcerated at the South Central Correctional Center ("SCCC") in Licking, Missouri. (Doc. 1). Plaintiff alleges Defendant, an employee of the Missouri Department of Corrections, violated his constitutional rights by failing to protect him from an attack by another inmate. *Id.* at 3.

On May 20, 2011, Plaintiff was in the main lunch line for the noon meal at SCCC. (Docs. 1 at 3, 90-1 at 3, 83-2 at 2). Plaintiff alleges that as he was talking to Defendant, Defendant "took about three steps back away from me." *Id.* "[F]airly immediately" after Defendant moved away from Plaintiff, and without warning, Plaintiff was struck from behind in a surprise attack by

another inmate. *Id.* In his deposition testimony, Plaintiff maintained he did not know his assailant before the attack, and that in fact Plaintiff had "never met this person . . . never been around this person at all." (Doc. 83-2 at 4-5). As a result of this admittedly "surprise" attack (*id.* at 6), Plaintiff suffered injuries that required hospital treatment. (Doc. 1 at 3). Plaintiff filed this § 1983 action against Defendant in his individual capacity, seeking monetary and injunctive relief for Defendant's "failure to protect [Plaintiff] from knowing harm." *Id.* at 3-4.

Defendant argues he is entitled to summary judgment because: (1) Defendant was not working at the time of the assault; (2) "Plaintiff cannot establish that Defendant was actually aware of a seriously threat by the previously, unknown offender" [sic]; and (3) Defendant is entitled to qualified immunity, barring Plaintiff's claims against him. Plaintiff counters that Defendant was in fact working on the day in question and that "Defendant had actual knowledge of the assault" evidenced by "Defendant Box's actions taking three steps away from Plaintiff." (Doc. 90 at 4).

## II.    Legal Standard

A moving party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is appropriate if the evidence, viewed in the light most favorable to the [nonmovant] and giving [the nonmovant] the benefit of all reasonable inferences, shows there are no genuine issues of material fact and [the movant] is entitled to judgment as a matter of law." *Price v. N. States Power Co.*, 664 F.3d 1186, 1191 (8th Cir. 2011). The movant "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] ... which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

2

"Once the moving party has made and supported their motion, the nonmoving party must proffer admissible evidence demonstrating a genuine dispute as to a material fact." *Holden v. Hirner*, 663 F.3d 336, 340 (8th Cir. 2011); *see also Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011).

A party opposing summary judgment "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "The nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial." *Briscoe v. Cnty. of St. Louis, Mo.*, 690 F.3d 1004, 1011(8th Cir. 2012) (citation omitted); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

"Summary judgment is an extreme remedy which is not to be granted unless the movant has established his right to judgment [with] such clarity as to leave no room for controversy and that the other party is not entitled to recover under any possible circumstances." *New England Mut. Life Ins. Co. v. Null*, 554 F.2d 896, 901 (8th Cir. 1977). "Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Torgerson*, 643 F.3d at 1042 (internal quotation marks and citation omitted). "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." *Thomas v. Corwin*, 483 F.3d 516, 526–27 (8th Cir. 2007). "Summary judgment should not be granted if a reasonable jury could return a verdict for the nonmoving party." *Woodsmith Publ'g Co. v. Meredith Corp.*, 904 F.2d 1244, 1247 (8th Cir. 1990) (citing *Anderson*, 477 U.S. at 248). "Credibility

3

determinations, the weighing of the evidence and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000) (quoting *Anderson*, 477 U.S. at 255). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Torgerson*, 643 F.3d at 1042 (internal quotation marks and citations omitted).

### III. Analysis

To establish a cause of action under § 1983, Plaintiff must assert that a state official violated his or her constitutional rights. 42 U.S.C. § 1983. The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. "Because being subjected to assault is not part of the penalty that criminal offenders must pay for their offenses, the Eighth Amendment's prohibition against cruel and unusual punishment requires prison officials to take reasonable measures to guarantee inmate safety by protecting them from attacks by other prisoners." *Whitson v. Stone Cnty. Jail*, 602 F.3d 920, 923 (8th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994)). "Of course, prison officials do not commit a constitutional violation every time one prisoner attacks another." *Young v. Selk,* 508 F.3d 868, 872 (8th Cir. 2007) (internal citations omitted).

"Qualified immunity protects government officials performing discretionary functions from liability for damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Curry v. Crist*, 226 F.3d 974, 977 (8th Cir. 2000); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "To resolve a government official's claim of qualified immunity, [the Court applies] a two-part test, asking whether the plaintiff has demonstrated a violation of a constitutional right and whether that constitutional right was clearly established at the time of the violation." *Williams v. Jackson*,

4

600 F.3d 1007, 1012 (8th Cir. 2010); *see also Irving v. Dormire*, 519 F.3d 441, 446 (8th Cir. 2008). "District courts may consider these two questions in any order, but may not deny qualified immunity without answering both questions in the plaintiff's favor." *Walton v. Dawson*, 752 F.3d 1109, 1116 (8th Cir. 2014); *see also Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

"In order to prevail in failure-to-protect cases, inmates must make two essential showings." *Jensen v. Clarke*, 94 F.3d 1191, 1197 (8th Cir. 1996); *see also Farmer*, 511 U.S. at 834 ("[A] prison official violates the Eighth Amendment only when two requirements are met."). Plaintiff "must show (1) an 'objectively, sufficiently serious' deprivation, meaning that he was incarcerated under conditions posing a substantial risk of serious harm, and (2) that the defendant was deliberately indifferent to the substantial risk of serious harm." *Schoelch v. Mitchell*, 625 F.3d 1041, 1046 (8th Cir. 2010) (internal quotation omitted) (quoting *Farmer*, 511 U.S. at 834). "Deliberate indifference is the reckless disregard of a known, excessive risk of serious harm to inmate health or safety." *Jackson v. Everett*, 140 F.3d 1149, 1152 (8th Cir. 1998).

An inmate must "establish reckless disregard by prison officials . . . [by] show[ing] that he was faced with a pervasive risk of harm and that the prison officials failed to respond reasonably to that risk." *Falls v. Nesbitt*, 966 F.2d 375, 377-78 (8th Cir. 1992) (internal citations omitted). Indeed, "[a] single episode of violence, without warning or suspicion, is insufficient to establish a pervasive risk of harm, particularly when the injured inmate views the attack as an isolated incident." *Id.* at 379. Thus, "prison officials are entitled to qualified immunity from claims arising out of a surprise attack by one inmate on another." *Id.* (citing *Prosser v. Ross*, 70 F.3d 1005, 1007 (8th Cir. 1995)); *see Tucker v. Evans*, 276 F.3d 999, 1001 (8th Cir. 2002); *Curry v. Crist*, 226 F.3d 974, 978-79 (8th Cir. 2000).

5

Here, by Plaintiff's own admission, the attack giving rise to the injuries Plaintiff asserts as the basis of this § 1983 claim against Defendant was in every sense a surprise attack. Plaintiff admits in his own recollection that he was hit without warning or provocation from behind and "had no idea who it was or what it was for or anything." (Docs. 90-1 at 3; 83-2 at 3 and 6; *see* 84-1 at 3). Furthermore, Plaintiff admits that before this incident, he had never met the other inmate, had never spoken with the other inmate, and had never had any conversations with any correction officers, let alone Defendant Box, concerning the other inmate. (Doc. 83-2 at 4-6). Instead, Plaintiff argues that "Defendant Box's taking th[]e three steps away from Plaintiff constitutes that Defendant Box had fore warning that the Plaintiff was going upcome serious harm" [sic]. However, without a previous history or indication of some risk to Plaintiff from a specific inmate, a sudden and isolated attack is insufficient to establish that Defendant acted with deliberate indifference to a substantial harm. Even assuming arguendo that Defendant was on duty and saw the attack occur, it is clear that this is insufficient to bring a failure-to-protect claim where there is no pervasive risk of harm that is sufficient to rise to the standard of an Eighth Amendment violation.

Therefore, construing the facts in the light most favorable to Plaintiff, Defendant is entitled to qualified immunity on Plaintiff's failure-to-protect claim because Plaintiff admits he was without fear of the other inmate before the attack, had never even met the other inmate, and that the attack occurred without provocation or warning. The Court finds Plaintiff has failed to satisfy the objective prong of the failure-to-protect claim.[1] Accordingly, because Plaintiff is unable to satisfy the two requirements necessary to prevail on an Eighth Amendment failure-to-

---

[1] The Court will not address the objective element of Plaintiff's failure-to-protect claim, in light of the Court's finding that Plaintiff failed to satisfy the deliberate indifference prong of the test. *See Jensen,* 94 F.3d at 1197 ("In order to prevail in failure-to-protect cases, inmates must make two essential showings.").

protect claim, the Court finds Plaintiff has failed to "demonstrate[] a violation of a constitutional right" sufficient to maintain an actionable claim under § 1983.[2] *Williams*, 600 F.3d at 1012. Defendant Box is entitled to qualified immunity.

## IV.     Conclusion and Notice of Appellate Filing Fee

For the reasons explained above, and having considered Plaintiff's evidence, arguments, and claims, the Court finds that this case presents no unresolved issue of material fact and that Defendant is entitled to judgment as a matter of law. Therefore, Defendant Box's Motion for Summary Judgment will be granted and this case will be dismissed.

Plaintiff is advised that if he appeals this dismissal, in addition to the $350 filing fee, federal law "'makes prisoners responsible for [appellate filing fees of $505] the moment the prisoner . . . files an appeal.'" *Henderson v. Norris*, 129 F.3d 481, 483 (8th Cir. 1997) (citation omitted). Pursuant to *Henderson*, Plaintiff is notified as follows:

> (a) the filing of a notice of appeal by the prisoner makes the prisoner liable for payment of the full [$505] appellate filing fees regardless of the outcome of the appeal; (b) by filing a notice of appeal the prisoner consents to the deduction of the initial partial filing fee and the remaining installments from the prisoner's prison account by prison officials; (c) the prisoner must submit to the clerk of the district court a certified copy of the prisoner's prison account for the last six months within 30 days of filing the notice of appeal; and (d) failure to file the prison account information will result in the assessment of an initial appellate partial fee of $35 or such other amount that is reasonable, based on whatever information the court has about the prisoner's finances.

*Id.* at 484.

---

[2] The Court will not address the second prong of the qualified immunity standard, in light of the Court's finding that Plaintiff failed to demonstrate a violation of a constitutional right. *See Walton*, 752 F.3d at 1116 ("District courts may consider these two questions in any order, but may not deny qualified immunity without answering both questions in the plaintiff's favor.").

Accordingly, it is **ORDERED** that:

(1) Defendant's Motion for Summary Judgment (Doc. 83) is granted; and

(2) this case is dismissed.

**IT IS SO ORDERED.**

/s/ Greg Kays
GREG KAYS, CHIEF JUDGE
UNITED STATES DISTRICT COURT

Dated: November 30, 2017